UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORETTA M. LINDY,

       Plaintiff,

v.                                                                                          Case No. 1:11-cv-1107
                                                                                            Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## OPINION

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

      Plaintiff was born on June 14, 1963 (AR 150).[1] She alleged a disability onset date of July 20, 2008 (AR 150). On that date, plaintiff reportedly slipped near a sink in her employer's bathroom, resulting in a left wrist sprain, elbow contusion, shoulder strain and knee contusion (AR 222-23). Plaintiff also suffered an injury to her left eye in 1980, which resulted in her being "legally blind" in that eye (AR 45). Plaintiff also testified that while she has "blind spots" in her eye, she can see "quite clearly" with her glasses (AR 45-46).

      Plaintiff graduated from high school and later attended some college classes where she earned a secretarial certificate (AR 33-35). She had previous employment as a billing clerk at a CPA firm, a census taker and a customer services representative at a call center (AR 35-38, 156).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff identified her disabling conditions as: regional pain disorder on left arm and hand, shoulder and neck; and blind in the left eye (AR 155). Plaintiff stated that her condition limited her ability to work because: she is in constant pain when she moves her hands; she cannot sit a long period of time; and she cannot lift or carry with her left hand (AR 155). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on May 13, 2011 (AR 12-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since she applied for SSI on June 10, 2009 (AR 14).[2] Second, the ALJ found that plaintiff had severe impairments of: left wrist injury and reflex sympathetic dystrophy (RSD) of the left upper extremity and/or complex regional pain syndrome (CRPS); and post-bariatric hypoglycemia with recent reversal of bariatric surgery (AR 14). The ALJ considered the hypoglycemia and abdominal problems related to her surgery, but found that the record does not support an ongoing problem which is expected to last for a period of 12 continuous months and which resulted in significant work-related functional limitations (AR 18-19). Similarly, the ALJ found that plaintiff did not have ongoing depression which lasted for a period of 12 continuous months and which resulted in significant work-related functional limitations (AR 19). Although the ALJ found that plaintiff suffered from severe impairments of post-bariatric

---

[2] While plaintiff earned $525.00 after her SSI application date, the ALJ found that her earnings did not rise to the level of substantial gainful activity (AR 14). In addition, the ALJ observed that on September 1, 2009, plaintiff received a worker's compensation settlement of $80,000.00 (minus attorney fee, expenses, and redemption fee and plus payment of any unpaid medical bills) (AR 14).

hypoglycemia with recent reversal of bariatric surgery (AR 14), he later stated that these conditions were not severe impairments because they did not last for 12 months (AR 18-19). *See* discussion, § III.B., *infra*. The ALJ also found that plaintiff's claim of ongoing depression was not a severe impairment (AR 19).

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). In this regard, the ALJ reviewed Listing 1.02.B (Major dysfunction of a joint - Involvement of one major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively) (AR 19).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with some limitations:

> She could lift and/or carry 20 pounds occasionally and 10 pounds frequently with the right dominant hand, would be limited to minimal use of the left (nondominant) upper extremity, and would be limited to jobs requiring only the use of her dominant right upper extremity. In an 8-hour workday with normal breaks, she could stand and/or walk for a total of about 6 hours and could sit for a total of about 6 hours.

(AR 19). The ALJ also found that plaintiff could not perform any of her past relevant work (AR 21-22).

At the fifth step, the ALJ determined that plaintiff could perform a range of unskilled light work in the regional economy (defined as the Lower Peninsula of Michigan), including greeter (4,500 jobs), parking lot cashier (1,500 jobs), and product inspector (2,000 jobs) (AR 22-23). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since June 10, 2009, the date plaintiff filed her application for SSI (AR 23).

### III. ANALYSIS

Plaintiff has raised three issues on appeal:

**A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physicians.**

Plaintiff contends that the ALJ failed to adopt the findings of plaintiff's treating physician, Derek Lado, M.D., who is board certified in physical medicine and rehabilitation (AR 771). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then

the agency will give the opinion controlling weight. 20 C.F.R. § 416.927(c)(2). An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ placed "great weight" on the opinions of Dr. Lado and Joseph VandenBosch, M.D., a physician at Michigan Pain Consultants, P.C. (AR 21). In October 2008, Joseph VandenBosch, M.D., a physician at Michigan Pain Consultants, P.C., examined plaintiff (AR 271). Dr. VandenBosch noted that plaintiff had problems with her left wrist and hand pain, along with some radiating shoulder and upper arm pain, but he did not believe that plaintiff's pain was sympathetically maintained (AR 271).

Dr. Lado testified at a deposition related to plaintiff's workers' compensation claim (AR 715-69). The ALJ summarized the doctor's testimony follows:

> Dr. Lado underwent a 55-page deposition on June 9, 2009 for the Bureau of Workers' Disability Compensation. He reported that her [left] hand was getting worse, was dysfunctional, and fit the characteristics of complex regional pain syndrome. He noted that she had not responded to any type of conventional treatments and did not expect her to improve. He indicated she would be quite limited in a job requiring two hands and indicated that her pain was affecting her

> function, her concentration, and her emotional well-being. On cross examination, Dr. Lado reported her left hand had gradually become worse, discolored, red, and clawed; she had decreased fine motor activity in her hand; she had very little movement; her hand was not shiny; and there was no temperature change. He reported that he had not seen her since May 5, 2009 (Exhibit 23F).

(AR 17).

Plaintiff contends that Dr. Lado's opinion went beyond the inability to physically use her left hand. Rather, the doctor opined that plaintiff's hand pain also affected her ability to concentrate (AR 746) and that the ALJ did not address this issue. Dr. Lado testified that plaintiff was not showing signs of a complex regional pain syndrome when Dr. VandenBosch saw her in October 2008 (AR 752). However, Dr. Lado testified that during plaintiff's last visit on May 5, 2009, she was having a progression of a sympathetic response: her hand was discolored; she had increased redness; and she had a shininess to her skin (AR 740). The doctor also concluded that plaintiff had allodynia, which meant "that her left hand is getting worse . . . she's always had pain on palpation over her scaphoid bone and now she has allodynia, which just means light touch in that region causes significant pain" (AR 741). While the ALJ stated that he gave great weight to Dr. Lado's opinion, he did not address the sympathetic response or the allodynia as identified by the doctor.

Dr. Lado subsequently examined plaintiff on June 23, 2009 (AR 287). At that time, he observed increased redness and discoloration of the left hand, with flexion contractures on three fingers with a fourth finger beginning to have contractures (AR 287). The doctor could not assess temperature change in the left hand because plaintiff was wearing a wrist brace which kept her left arm warm (AR 287). The doctor did find positive signs of allodynia, noting that a very light touch throughout the dorsal aspect of her left hand caused a stinging shooting type sensation which was

not present in the right hand (AR 287). Dr. Lado concluded that plaintiff's left hand pain looked consistent with chronic regional pain syndrome and that she did not respond to any sympathetic blocks (AR 287). However, plaintiff had to refuse a test to determine definitively whether this condition was chronic regional pain syndrome, because she was allergic to the dye used in the test (AR 287).

The ALJ found that "[a]lthough the doctors [Lado and VandenBosch] may have had different opinions on the diagnosis, the record establishes that the claimant is limited to work basically requiring the use of only one hand" (AR 21). Consistent with this finding, the ALJ determined that plaintiff's RFC" would be limited to jobs requiring only the use of her dominant right upper extremity" (AR 19).

After reviewing Dr. Lado's deposition testimony and his June 2009 opinion, it appears to the court that the ALJ's summary of that testimony is not entirely accurate. The summary does not discuss Dr. Lado's opinion of plaintiff's pain and erroneously states that the doctor found plaintiff's hand was "not shiny" (when in fact the doctor testified that it was shiny). The latter detail is significant because, according to Dr. Lado, plaintiff's skin *was* shiny in May 2009 and this symptom indicated a progression of the sympathetic response (AR 740-41). While the ALJ adopted some of Dr. Lado's opinions, he did not articulate reasons for rejecting the doctor's opinions with respect to whether plaintiff's condition could result in disabling pain arising from the sympathetic response and allodynia.[3] While the ALJ pointed out that plaintiff performed a number of activities

---

[3] The court notes that the ALJ commented on plaintiff's hand color, stating:

"At the hearing, the claimant showed her hand to the representative who noted some mild color change. From the undersigned's view of the hands, the left hand did not look so different and did not appear to show any color change from his vantage point" (AR 21).

9

as reported in her function report of September 2010 (such as living alone, making coffee, letting the dog out, checking her e-mail, walking to get the mail, playing Facebook games, preparing meals for her daughter and herself, doing all household chores, listening to music, having visitors, shopping for groceries on a weekly basis, paying bills, talking on the telephone and walking) (AR 20), he did not reference these activities in evaluating Dr. Lado's opinions.

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Lado's deposition testimony with respect to his opinions of plaintiff's pain related to the RSD and the allodynia.

> **B. The ALJ did not have substantial evidence to support his finding that plaintiff's post-bariatric hypoglycemia was an impairment that would not last 12 months.**

The ALJ determines the existence of severe impairments at step two of the sequential evaluation:

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section [20 C.F.R. § 416.920(c)].)

20 C.F.R. § 416.920(a)(4)(ii). A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). In addition, the severe impairment must meet the duration requirement:

---

In the absence of medical evidence evaluating the color of plaintiff's left hand at the hearing, and the significance of that color with respect to a diagnosis of RSD, the ALJ's observation does not appear relevant.

> Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.

20 C.F.R. § 416.909. *See, e.g.*, *Graham v. Apfel*, 102 F.Supp.2d 72, 80 (D.Conn. 1999) (To satisfy the duration requirement [for a severe impairment] the plaintiff must demonstrate that his disability prevented him or would prevent him from performing any substantial gainful activity for twelve continuous months. *See Neal v. Bowen*, 829 F.2d 528, 530–31(5th Cir.1987)).

The gist of plaintiff's argument is that the ALJ did not identify her hypoglycemia as a severe impairment because it did not last for more than 12 months. Upon determining that a claimant has one severe impairment at step two of the sequential evaluation, the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* In such cases, the ALJ can consider the non-severe conditions in determining the claimant's RFC. *Id.*

The ALJ's decision identified the following severe impairments: left wrist injury and RSD of the left upper extremity and/or CRPS; and post-bariatric hypoglycemia with recent reversal of bariatric surgery (AR 14). The ALJ's decision is confusing because he later states that plaintiff's hypoglycemia is not a severe impairment, because the hypoglycemia was not expected to last for a period of 12 continuous months (AR 18-19). The ALJ summarized plaintiff's post-bariatric surgery problems as follows:

> The claimant reported weighing 370 pounds at one time; having bariatric surgery in October 2006; having revision surgery in June 2007 due to ulcers in her pouch; being hospitalized for six days in August 2007 for abdominal pain and malnutrition and undergoing endoscopy and balloon dilatation at her

11

> gastroesophageal junction; and having stable weight of 150 pounds in September 2008 (Exhibits 3F and 17F). Dr. Edward J. Kryshak saw the claimant on November I5, 2010, for evaluation of post-gastric bypass hypoglycemia and recommended adjustments to her intake (Exhibit 25F). Dr. Douglas M. Leppink, a plastic surgeon, saw the claimant on April 21, 2010, to discuss panalculectomy for chronic intertriginous skin changes beneath the hanging pannus of abdominal skin following massive weight loss (Exhibit 12F). Dr. Paul Kemmeter saw the claimant in January 2011 with complaints of infraumbilical abdominal pain, episodes of hypoglycemia, and 11-pound weight loss in a month (Exhibit 18F). The claimant underwent laparoscopic reversal of Roux-En-Y gastric bypass, diagnostic laparoscopy, and intraoperative esophagogastroduodenoscopy on March 3, 2011 (Exhibit 20F). On follow-up visit on March 28, 2011, the claimant required drainage of a hematoma (Exhibit 2IF).
>
> The undersigned has carefully considered the hypoglycemia and abdominal problems; however, the record does not support an ongoing problem which is expected to last for a period of 12 continuous months and which resulted in significant work-related functional limitations. Therefore, they are not consistent with severe impairments.

(AR 18-19).

In short, the ALJ's decision is internally inconsistent, finding that the hypoglycemia was both a severe impairment and a non-severe impairment. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).

Given the inconsistency as to whether plaintiff's hypoglycemia was a severe impairment, it is unclear to the court as to whether ALJ considered the hypoglycemia in developing plaintiff's RFC. The ALJ's decision should be clarified on this issue. On remand, the Commissioner should re-evaluate plaintiff's hypoglycemia to determine whether this is a severe impairment expected to last 12 months or more, and, if not, what effect this condition has on plaintiff's RFC.

> **C. The ALJ committed reversible error by not following the vocational expert's answers to accurate hypothetical questions and by concluding that an insufficient number of available jobs was acceptable.**

### 1. Hypothetical question

Plaintiff contends that the ALJ posed an inaccurate hypothetical question to the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The hypothetical questions posed to the VE were limited to light exertional work and standing, walking and sitting restrictions as set forth in the ALJ's RFC determination (AR 64). However, the hypothetical questions posed by the ALJ contained different limitations with respect to plaintiff's use of her left arm than the limitations set forth in the RFC determination, which stated that plaintiff "would be limited to minimal use of the left (nondominant) upper extremity, and would be limited to jobs requiring only the use of her dominant right upper extremity" (AR 19).

Unlike the RFC, the ALJ's first hypothetical question did not limit the light work to the "right dominant hand." Rather, the hypothetical question assumed that "this person, with the left hand, can occasionally handle and finger; with the right hand, has no limitations in work" (AR 64). The ALJ later clarified that the hypothetical person was "right-handed" (AR 65-66). Based on these limitations, the VE testified that such a person could perform the following unskilled jobs in the lower peninsula of Michigan: greeter (4,500 jobs); parking booth/parking ramp cashier (1,500 jobs); and production inspector (2,000 jobs) (AR 66). These are the 8,000 jobs identified by the ALJ in his decision (AR 22-23).

The ALJ posed a second hypothetical question which changed the limitations on the left arm as follows: "the limitations as to the left upper extremity are that the person may not use the left upper extremity; that is, one-handed work with the right hand, which is the dominant hand" (AR 67). In response to the additional limitations in the second hypothetical, the VE reduced the available jobs as follows: greeter (1,500 jobs); parking lot cashier (1,500 jobs); and inspector (1,500 jobs) (AR 67-68).

The ALJ's third hypothetical question referred to limitations as set forth in an independent medical examination (IME) (Exhibit 3F), which was performed on September 8, 2008 (AR 68-69, 262-66). Plaintiff's counsel objected to the use of the IME, because that examination was

14

performed before plaintiff was diagnosed with chronic regional pain syndrome (AR 69). In the IME, the examiner determined that plaintiff "could work with restrictions for minimal use of the left upper extremity but full use of her right upper extremity," and that she could perform her past work (i.e., the examiner opined "I do not see why she could not return to work at Charter Communication Call Center at this time") (AR 265). The ALJ avoided the examiner's opinion that plaintiff could not perform her past relevant work, and amended the third hypothetical question to include the examiner's restriction of "minimal use of the left upper extremity but full use of her right upper extremity" (AR 68-70). The VE stated (contrary to the medical examiner's opinion) that the hypothetical person could *not* perform plaintiff's past relevant work (AR 70). The VE further stated that a person with these limitations could perform the 8,000 jobs identified in the first hypothetical (AR 70).

Plaintiff's attorney then posed various limitations to the VE. First, counsel referred to a hypothetical person bing in constant pain due to chronic regional pain syndrome (AR 71-72). The VE did not find the question "quantified very . . . well in functional terms," but testified that if a person was off task for any reason for more than 10 percent of the time, then that person had a work-preclusive condition (AR 71-72). Counsel asked if a person having blind spots would cause a reduction in jobs, to which the VE testified that it could result in a reduction (AR 72). Counsel also posed a limitation that such a person had to take glucose tablets to regulate hypoglycemia at unpredictable times during the day (AR 72-73). The VE viewed this limitation as the need to take one unscheduled break every day and that such a situation would not allow a person to work full time (AR 72-73). Finally, plaintiff's counsel asked if the inability to use the left hand due to pain, and the lack of concentration due to the pain would be work preclusive, to which the VE responded affirmatively (AR 73).

15

As an initial matter, the basis for the ALJ's decision that plaintiff could perform 8,000 jobs is unclear. It appears that the ALJ relied on either the first or the third hypothetical question as the basis for his decision. However, the RFC is inconsistent with these hypothetical questions. The second hypothetical question included limitations most similar to the RFC determination, i.e., that plaintiff was limited to one-handed work with the right hand. In response to this hypothetical, the VE reduced the available jobs to 4,500. Accordingly, on remand, the Commissioner is directed to clarify the precise limitations on plaintiff's left hand and arm, and obtain vocational evidence consistent with those limitations.

### 2.     Number of available jobs

Plaintiff contends that the number of jobs identified by the ALJ does not constitute a significant number of jobs in the economy that accommodate her RFC as required by step five of the sequential evaluation. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003) ("at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile"). Given the record in this case, it is premature to address this issue, because it is unclear as to whether the ALJ's RFC determination would result in 8,000 jobs or 4,500 jobs. In addition, plaintiff's RFC determination and the number of available jobs may change on remand depending upon the ALJ's re-evaluation of the other evidence. Accordingly, this claim of error is denied as moot at this point.

### IV.  CONCLUSION

The ALJ's decision is not supported by substantial evidence. The Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further

proceedings. On remand, the Commissioner is directed (1) to re-evaluate Dr. Lado's deposition testimony with respect to his opinions of plaintiff's pain related to the RSD and the allodynia, (2) re-evaluate plaintiff's hypoglycemia to determine it is a severe impairment, and, if not, what effect this condition has on plaintiff's RFC, (3) clarify the precise limitations on plaintiff's left hand and arm, and (4) re-evaluate the vocational evidence at step five of the sequential evaluation consistent with the determinations made on remand. A judgment consistent with this opinion will enter.

Dated: March 19, 2013                              /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge